SCOTT N. SCHOOLS, S. Carolina Bar No. 9990
United States Attorney

THOMAS MOORE (ASB 4305-078T)
Assistant United States Attorney
Acting Chief, Tax Division
9th Floor Federal Building
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102
Tel. No. (415) 436-6935

THOMAS M. ROHALL, Wash. St. Bar No. 12201
Special Assistant United States Attorney
4330 Watt Ave., Suite 470
Stop No. SA 2801
Sacramento, CA 95821-7012
Tel. No. (916) 974-5700
Fax No. (916) 974-5732

Attorneys for United States of America

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>DEAN GORDON POTTER,<br><br>Debtor. | Case No.: 06-42425-LT-11<br>CHAPTER 11<br><br>**UNITED STATES POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE**<br><br>Hearing Date: None yet set<br>Hearing Time: |

The United States of America, on behalf of its agency, the Internal Revenue Service, by and through its undersigned attorneys, hereby files this Memorandum of Points and Authorities in Support of its Motion to Withdraw the Reference and to Transfer Venue.

In order to join two civil cases which arise from the same transactions, the United States requests that the Court withdraw the reference to the Bankruptcy Court of the federal tax disputes of debtor, Dean Gordon Potter, and then to transfer venue of the dispute to the United States District Court for the Eastern District of California, where the related tax refund suit is pending.

## ISSUES PRESENTED

1. Whether the withdrawal of this Court's reference to the U.S. Bankruptcy Court for the Northern District of California with respect to Potter's federal tax disputes is mandatory under 28 U.S.C. § 157(d).

2. Whether Potter's federal tax dispute should be transferred to the United States District Court for the Eastern District of California, where a corporate tax refund suit arising from the same transactions has recently been filed.

## STATEMENT OF THE CASE

On December 12, 2006, debtor filed a voluntary chapter 11 petition. As the Internal Revenue Service and the California Franchise Tax Board (on similar claims) are the only substantial impaired classes of creditors, the bankruptcy filing appears to have been motivated solely by this tax dispute. In fact at the Meeting of Creditors, (the 341 meeting) debtor through his attorney stated that the reason for the bankruptcy is to litigate the tax disputes.

On April 9, 2007, Potter filed an adversary proceeding seeking a tax refund relating to the OEL Arrangement. *Potter v. United States*, Adv. No. 07-04066-LT (Bankr. N.D. Cal.) The adversary proceeding seeks a refund of individual income tax in the amount of $358,054 for the taxable year ending December 31, 1998.

On May 29, 2007, Unico Services Inc. ("Unico") filed a complaint seeking a refund of employment taxes in the United States District Court for the Eastern District of California. *Unico Services Inc. v. United States*, case no. 2:07-CV-01009-MCE-KJM (E.D. Cal.). Unico claims that, because a deduction was denied for payments relating to Potter, that it cannot be liable for employment taxes for those payments. John Gigounas is tax counsel for both Potter and Unico.

On or about June 6, 2007, the United States filed a proof of claim for individual income taxes and related penalties in the Potter bankruptcy in an amount exceeding $7 million, and Potter has objected to the claim. The Potter objection to the IRS claim and the adversary proceeding seeking a tax refund, together will be referred to as the "federal tax disputes."

The Unico case and the Potter federal tax dispute arise from the same set of transactions. Potter and Unico were involved in an offshore employee leasing tax avoidance scheme described in IRS Notice

2003-22, 2003-18 I.R.B. 851, 1 C.B. 851 (IRB 2003)(copy attached). The Service refers to this transaction as OEL (Offshore Employee Leasing). Essentially the scheme involves the following:

> In a typical OEL scheme, an individual taxpayer (Individual Taxpayer) [**Potter**] purports to terminate his existing employment relationship with a domestic corporation (Service Recipient Corporation) [**Unico**]. The Individual Taxpayer then purports to enter into an employment relationship with a foreign corporation (Foreign Leasing Corporation) [**Pixley Services, Inc and later International Employment Services, Inc. (IESI)**] that is domiciled in a country with which the United States has an income tax convention [**Ireland in this instance and later Barbados**]. The Foreign Leasing Corporation purports to lease the right to the Individual Taxpayer's services in the United States to a domestic corporation (Domestic Leasing Corporation) [**Release Me and later Fair Skys**]. The Domestic Leasing Corporation, in turn, purports to lease the Individual Taxpayer's services to the Service Recipient Corporation [**Unico**]. After entering into this sham arrangement, the Individual Taxpayer continues to provide substantially the same services for the Service Recipient Corporation that he provided before entering into this scheme.

The Potter-Unico OEL Arrangement proceeded virtually as described in Notice 2003-22. The Service conservatively estimates, based on open cases which have been processed, that the OEL Arrangement resulted in unpaid income and employment tax in excess of $50 million and related penalties exceeding $15 million.

At all relevant times, Potter was Unico's President, majority shareholder, and key employee. Immediately before he implemented the OEL Arrangement, Potter owned, directly or indirectly, 100 percent of Unico's stock. Potter was the only Unico worker covered by the OEL Arrangement. Before, during and after the arrangement, Potter continued to sign Unico's legal documents as President of Unico, Potter continued to serve as the key worker at Unico, and Potter continued to serve as the sole Responsible Managing Officer for Unico on its engineering licenses which enabled Unico to engage in its business. There is no evidence that Unico or Potter informed any Unico customer, insurer or licensing agency that Potter was purportedly no longer Unico's employee.

Under the OEL arrangement, Unico paid Release Me for Potter's services, and Release Me paid Potter a modest salary from the amount it received from Unico. After retaining a fee, Release Me transferred the bulk of the funds it received (more than $2.6 million from 1998-2002) from Unico to Pixley. Pixley in turn sent the amount it received, less a fee, to various entities and accounts in tax haven jurisdictions. The United States contends that Potter has retained control over the funds

transferred to offshore tax havens. Potter has not reported the funds transferred to Pixley as income. The fictitious circularity of the OEL arrangement had Potter working for Unico, just as he had for more than 30 years.

There are many tax consequences, both for Potter and Unico, that would flow from the proper characterization of the OEL payments. For example, the Service asserts a tax deficiency against Potter based on his failure to report as income the unreported amounts that Unico paid into the OEL arrangement. To prevent a whipsaw, the Service also disallows to Unico the claimed deduction for all funds paid into the OEL arrangement. These positions are potentially inconsistent since compensation is generally a deductible expense.

> A whipsaw occurs when different taxpayers treat the same transaction involving the same items inconsistently, thus creating the possibility that income could go untaxed, or two unrelated parties could deduct the same expenses on their separate returns. In such circumstances, [the Service] was fully entitled to defend against inconsistent results by holding both parties to the transaction liable for the deficiency.

*Maggie Management Co. v. Commissioner*, 108 T.C. 430, 436 (1997), *see also, Fayeghi v. Commissioner*, 211 F.3d 504, 508 (9th Cir. 2000); *In re Indian Motorcycle Co. v. IRS*, 452 F.3d 25, 27 n. 2 (5th Cir. 2006) (citing *Sherbo v. Commissioner*, 255 F.3d 650, 655 (8th Cir. 2001)).

Under the OEL Arrangement, Potter claims that because of the sham contracts he should be treated as an employee of Pixley and not Unico. In both the Potter bankruptcy and the Unico refund suit, one issue raised is whether Potter remained an employee of Unico. The resolution of this fact question would be important for both the Potter federal tax dispute and the Unico case. A court which has as parties both ends of the OEL Arrangement is likely to obtain a more complete view of the entire transaction.

The United States will argue, inter alia, that the OEL Arrangement should be disregarded under doctrines of substance-over-form, step-transaction,[1] and economic substance. The form of the offshore employee leasing arrangement should be disregarded as an elaborate attempt to avoid federal taxation, substance should control. Potter in fact remained Unico's employee, as he had been for many years.

---

[1] "Under this doctrine, interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction. By thus 'linking together all interdependent steps with legal or business significance, rather than taking them in isolation,' federal tax liability may be based 'on a realistic view of the entire transaction.' 1 B. Bittker, Federal Taxation of Income, Estates and Gifts para. 4.3.5, p. 4-52 (1981)."

*U.S. Points and Authorities in Support of Motion* -4-

The deferred compensation plan Potter claims his alleged foreign employer provided to him was ineffective to defer Potter's income. The only purpose of the OEL Arrangement was to conceal taxable income and to avoid tax collection after the scheme was unwound.

## ARGUMENT

**I. For several reasons, withdrawal of the reference of the debtors' Federal Tax Disputes to the Bankruptcy Court is mandatory under 28 U.S.C. § 157(d).**

First, the merits of the federal tax disputes hinge on the interpretation and application of doctrines of step-transaction, substance-over- form, and economic substance, and thus require substantial and material consideration of complex federal tax issues of first impression.[2] Second, the complexity of the OEL Arrangement magnifies the substantial and material consideration of the tax doctrines in this case. Third, in light of the significance of the federal tax issues presented by the federal tax dispute, as well as the fiscal magnitude of this controversy, appellate proceedings are practically inevitable; thus, withdrawing the reference will streamline this litigation by eliminating one tier of proceedings, insofar as this Court will address and resolve the foregoing issues of fact and law in the first instance, rather than on appeal from the Bankruptcy Court. Lastly, mandatory withdrawal of the reference to the Bankruptcy Court acknowledges this Court's greater experience with administering and deciding large, complex cases involving significant non-bankruptcy issues of law, and honors the intent of Congress that such issues be reserved to Article III courts in the first instance. Accordingly, the United States moves this Court to withdraw the reference.

### A. Legal Standard for Mandatory Withdrawal of the Reference.

Pursuant to 28 U.S.C. § 157(a), the Bankruptcy Court derives its authority to entertain bankruptcy proceedings from the reference of the District Court. The Northern District of California has automatically referred all proceedings arising under title 11 to the bankruptcy judges of this district. See District Court General Order No. 24, § 1.01; Bankr. Local Rule 5011-1(a). Conversely, Section 157(d) authorizes a district court to withdraw the reference of a bankruptcy case to the bankruptcy court if certain conditions are met:

---

[2] The doctrines mentioned in this motion are not an exhaustive list of the arguments the United States will raise in this case. Many Internal Revenue Code sections also apply. The United States reserves the right to raise legal arguments according to the evidence presented.

*U.S. Points and Authorities in Support of Motion* -5-

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court **shall**, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and **other laws of the United States** regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).

As Section 157(d) makes clear, the district court can withdraw the reference in two ways: (i) mandatory withdrawal, or (ii) permissive withdrawal. *In re Homeland Stores, Inc.*, 204 B.R. 427, 430 (D. Del. 1997). Withdrawal of the reference is mandatory whenever substantial and material consideration of non-bankruptcy law is necessary to resolve the case. *Security Farms v. Int'l Brotherhood of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990); *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 952 (7th Cir. 1996); *In re CM Holdings, Inc.*, 221 B.R. 715, 721 (D. Del. 1998) ; *In re G-I Holdings, Inc.*, 295 B.R. 222 (D. N.J. 2003); *In re Johns-Manville Corp.*, 63 B.R. 600, 602 (S.D. N.Y. 1986); *In re White Motor Corp.*, 42 B.R. 693, 700-05 (N.D. Ohio 1984); *Hatzel & Buehler v. Orange & Rockland Utilities*, 107 B.R. 34, 38 (D. Del. 1989); *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 150 B.R. 976, 979-981 (D. Kan. 1993) (surveying precedents and concluding that test for mandatory withdrawal is "substantial and material consideration" of non-bankruptcy federal law).[3]

The guiding distinction is that withdrawal is mandatory in cases presenting "issues requiring significant interpretation of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge," rather than the "straightforward application of a [non-bankruptcy] federal statute to a particular set of facts." *Johns-Manville*, 63 B.R. at 602; *see also CM Holdings*, 221 B.R. at 722 (distinguishing "substantial and material consideration of the tax law" from "mere straightforward application of tax law"); *Franklin*, 150 B.R. at 980 ("Withdrawal is required if the bankruptcy court would be called upon to make a significant interpretation of a non-[bankruptcy] federal statute," as distinguished from "its routine application to the facts.") (citing *City of New York v. Exxon*

---

[3] If the district court determines that withdrawal is not mandatory, the United States requests that it proceed to determine whether or not the United States has demonstrated cause for it to exercise its discretion in favor of withdrawing the reference associated with the Federal Tax Disputes. *See In re Rimsat, Ltd.*, 196 B.R. 791, 799 (N.D. Ind. 1995). The United States submits that it has shown cause for the Court to exercise its discretion to withdraw the reference with respect to the federal tax disputes.

*U.S. Points and Authorities in Support of Motion*                                                      -6-

*Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991); *In re Ionosphere Clubs*, 922 F.2d at 995; *Wittes v. Interco, Inc.*, 137 B.R. 328, 329 (E.D. Mo. 1992); *In re Coated Sales, Inc.*, 146 B.R. 83, 84 (S.D. N.Y. 1992); *In re National Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992)). Moreover, withdrawal of a bankruptcy proceeding is mandatory whenever "the non-[bankruptcy] issues can be said to dominate the bankruptcy issues." *Franklin*, 150 B.R. at 980 (citing *In re Lenard*, 124 B.R. 101, 102 (D. Colo. 1991); *In re Texaco, Inc.*, 84 B.R. 911, 921 (S.D. N.Y. 1988)).

Federal courts have not hesitated to conclude that matters involving significant interpretation of the Internal Revenue Code are subject to mandatory withdrawal under 28 U.S.C. § 157(d). *In re G-I Holdings, Inc.*, 295 B.R. at 226 (mandatory withdrawal of objection to IRS claim where a sale was disguised as a partnership formation); *CM Holdings*, 221 B.R. at 722-24 (mandatory withdrawal of objection to IRS claim which presented issues of first impression relating to tax treatment of corporate-owned life insurance (COLI)); *Central Valley Ag Enterprises v. United States*, 326 B.R. 807, 815 (E.D. Cal. 2005) (mandatory withdrawal of objection to IRS claim to determine legality of lease-stripping tax shelter); *In re Ionosphere Clubs, Inc.*, 142 B.R. 645, 649 (S.D. N.Y. 1992) (mandatory withdrawal of adversary proceeding requiring significant interpretation of Internal Revenue Code and ERISA); *In re Oil Company*, 140 B.R. 30, 34-35 (E.D. N.Y. 1992) ( mandatory withdrawal of objection to IRS claim in case presenting complex issues of first impression under Internal Revenue Code); *In re Pan Am Corp.*, 133 B.R. 700, 704 (S.D. N.Y. 1991) (objection to claim involving interaction of Title 11, Internal Revenue Code, and ERISA subject to mandatory withdrawal); *Century Hotels v. United States*, 952 F.2d 107, 108 n.1 (5th Cir. 1992) (noting district court's withdrawal of reference in adversary proceeding seeking turnover of property and asserting wrongful levy claim under 26 U.S.C. § 6426).

Here, the debtor's objection is based on its disputed interpretation of a series of pre-arranged transactions which sent income from an established employer-employee relationship, Unico-Potter, to an unreported offshore tax haven. No case has been found addressing the merits of the precise OEL Arrangement in any circuit. As explained below, this complex federal tax issue of first impression clearly meets the test for mandatory withdrawal of the reference with respect to the objection.[4]

---

[4] The Court can withdraw the reference of a particular proceeding, i.e., the federal tax dispute, while leaving the remainder of the original reference of the bankruptcy petition in place. *Hatzel & Buehler v. Orange & Rockland Utilities*, 107 B.R. 34, 36 (D. Del. 1989).

**U.S. Points and Authorities in Support of Motion**                                             -7-

B. Applicable Non-Bankruptcy Law.

The debtor has the burden of proving that he correctly reported his income. *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 26 (2000); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). The United States contends that the OEL Arrangement should not be recognized as valid for tax purposes and that Potter should report as income money transferred offshore.

The doctrines of substance-over-form, step-transaction, and economic substance are closely-related, judicially-created tax doctrines. Under these doctrines, although the form of a transaction may literally comply with the Internal Revenue Code, the form will not be given effect where it has no business purpose and operates merely as a device to conceal the true nature of a transaction. See *Gregory v. Helvering*, 293 U.S. 465, 469-470 (1935). Application of these doctrines requires a detailed analysis of the facts to determine whether the true substance of the transaction substantially differs from its form. *Andantech v. Commissioner*, 83 T.C.M. (CCH) 1476 (2002). "The issue of whether any of those doctrines should be applied involves an intensely factual inquiry." *Id.*

C. Withdrawal of the Reference is Mandatory.

In light of the foregoing, the grounds mandating withdrawal of the reference with respect to the debtor's objection are clear.

*1. Case of First Impression.*

Applying the standard for mandatory withdrawal of the reference to the present controversy, it is clear that the pivotal issue presented by the Debtor's federal tax disputes – the correct characterization of the OEL Arrangement for tax purposes– is the very paradigm for mandatory withdrawal under 28 U.S.C. § 157(d), because it requires substantial and material consideration of a complex federal tax issue of first impression. *In re G-I Holdings, Inc.*, 295 B.R. at 226; *In re CM Holdings*, 221 B.R. at 722-24; *see also In re St. Mary Hospital*, 115 B.R. 495, 498 (E.D. Pa. 1990) ("Where the bankruptcy court must engage in a complex search for the appropriate interpretation of a non-bankruptcy federal statute involving an issue of first impression, section 157(d) withdrawal is required."), cited with approval in *Wood*, 161 B.R. at 19. This circumstance alone compels the withdrawal of the reference.

### 2. Complexity of the OEL Arrangement.

Significantly, in ascertaining the correct characterization of the OEL Arrangement, the Court must consult the venerable federal tax doctrine of "substance over form." As the Supreme Court has explained:

> In applying this doctrine of substance over form, the Court has looked to the objective economic realities of a transaction rather than to the particular form the parties employed. The Court has never regarded the simple expedient of drawing up papers, as controlling for tax purposes when the objective economic realities are to the contrary. In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding.

*Frank Lyon Co. v. United States*, 435 U.S. 561, 573 (1978) (internal quotations omitted) (citing *Commissioner v. Tower*, 327 U.S. 280, 291 (1946)); *Helvering v. Lazarus & Co.*, 308 U.S. 252, 255 (1939); *Commissioner v. P. G. Lake, Inc.*, 356 U.S. 260, 266-267 (1958); *Commissioner v. Court Holding Co.*, 324 U.S. 331, 334 (1945); see also *Gregory v. Helvering*, 293 U.S. 465, 469-470 (1935); *ACM Partnership v. Commissioner*, 157 F.3d 231, 247-52 (3d Cir. 1998).

In the instant case, the three employee leasing contracts comprise distinct steps in an integrated transaction but those steps had no business significance other than the avoidance of taxation. The realistic view of the transaction is that Potter remained Unico's employee.

To assist the Court in evaluating the economic realities of the transaction, the United States intends to retain at least one expert witness, and Potter and Unico will no doubt follow suit. The anticipated presentation of extensive expert testimony at trial underscores the complexity of this litigation and the resultant necessity of withdrawing the reference.

### 3. Practical Inevitability of Appeal.

In light of the significance of the federal tax issues presented by the Potter Federal Tax Disputes, as well as the fiscal magnitude of this controversy, it is almost inconceivable that neither party would appeal an adverse decision of the Bankruptcy Court to this Court, and perhaps further. Withdrawing the reference will streamline this litigation by eliminating one tier of proceedings, insofar as this Court will address and resolve the foregoing issues of fact and law in the first instance, rather than on appeal from the Bankruptcy Court.

### 4. *District Court Expertise Concerning Non-Bankruptcy Law and Administration of Complex Non-Bankruptcy Litigation.*

Mandatory withdrawal of the reference acknowledges that district courts have more experience administering and deciding large, complex cases involving significant non-bankruptcy issues of law, as compared to bankruptcy courts, and honors the intent of Congress that such issues be reserved to Article III courts in the first instance. See, e.g., *Franklin*, 150 B.R. at 980 ("The purpose of § 157(d) is to take from the bankruptcy courts those matters requiring the application of non-bankruptcy federal statutes affecting interstate commerce and give them to the district courts which have more experience in applying those laws.").

Further, complex federal tax litigation of this nature is best administered under Fed.R.Civ.P. 16 and this Court's Local Civil Rule, which set forth a comprehensive framework of procedures governing pretrial scheduling and discovery, including an early scheduling conference and the parties' submission of a joint discovery plan. Those advisable procedural safeguards would be lost if the reference is not withdrawn, because Fed.R.Civ.P. 16 is inapplicable to contested matters before the Bankruptcy Court. See Fed. R. Bankr. P. 9014 (omitting application of Fed.R.Civ.P. 16 and Fed. R. Bankr P. 7016 to contested matters). In addition, the multitude of complex legal issues presented by the debtors' objection will no doubt spawn an exchange of dispositive motions well- suited to the procedures of this Court's Local Civil Rules.

Allowing both parties a full and fair opportunity to conduct comprehensive discovery, within the structured context of a Rule 16 scheduling order, will naturally tend to flush out which issues are agreed or unagreed, and material or immaterial, thus narrowing the eventual scope of trial. The United States is entitled to depose representatives of the debtor, as well as third-party witnesses, including bankers, outside tax advisors, and the like, in order to ascertain whether such persons may have different views of the OEL Arrangement. Such discovery is necessary in order to overcome the natural advantage the debtor enjoys as custodian of most of the relevant information and documents in this case. *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 21 (2000) (citing "the taxpayer's readier access to the relevant information" as a "powerful justification" for making the taxpayer come forward with such information to satisfy its burden of proof).

For the reasons set forth herein, the United States respectfully requests that this Court withdraw the reference of the debtor's objection to the Bankruptcy Court, pursuant to 28 U.S.C. § 157(d).

**II. Potter's federal tax dispute should be transferred to the United States District Court for the Eastern District of California, where a corporate tax refund suit arising from the same transactions has recently been filed.[5]**

The United States respectfully requests that the Court enter an order transferring the withdrawn Potter federal tax dispute, consisting of an adversary proceeding and a contested matter (objection to claim), to the Eastern District of California so that the Potter and Unico cases, which arise directly from the same transactions, may be tried together[6]. "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The United States has the burden of showing that "the convenience of parties and witnesses" or "interest of justice" requires transfer to another district. *Commodity Futures Trading Comm'n v. Savage*, 611 F2d 270, 279 (9th Cir. 1979).[7] The United States relies primarily on the "interest of justice" prong in this argument.

The "interest of justice" test involves the application of a broad and flexible standard that is applied on a case by case basis. *In re Manville Forest Products Corp.*, 896 F.2d 1384 (2d Cir. 1990); *Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 680 (S.D. W. Va. 2005), citing 1 Howard J. Steinberg, Bankruptcy Litigation §§ 2:4, 2:6 (2005). Although the most important factor is said to be the economic and efficient administration of the bankruptcy estate, *Dunlap*, 331 B.R. at 680, this factor presumes the ordinary bankruptcy, with multiple creditors with competing interests. This is a one-issue bankruptcy with two impaired creditors, the Internal Revenue Service and the Franchise Tax Board, whose interests are aligned. There can be no estate administration until the tax dispute is resolved. The dispute, already transferred from the Bankruptcy Court to the District Court, does not have the ordinary pressures of

---

[5] This second argument, concerning the requested transfer of venue, need not be addressed if the Court denies the request to withdraw the reference.
[6] Many of the factors set forth above relating to withdrawal of the reference also weigh in favor of the transfer of venue from the Northern District to the Eastern District of California.
[7] Most cases which discuss discretionary venue transfer rely on 28 U.S.C. § 1404, and not § 1412, the statute relied upon in this motion. Both statutes permit transfer "in the interest of justice" and cases discussing the language should be considered, particularly where, as here, the United States seeks transfer only of the tax matters, and not the underlying bankruptcy. See, *In re B.L. of Miami, Inc.*, 294 B.R. 325, 330, (Bankr. D. Nev. 2003).

*U.S. Points and Authorities in Support of Motion* -11-

competing creditors and plan schedules, rendering the ties to the bankruptcy forum less compelling. The administration of the estate should not be considered a primary factor in this particular case.

The most important factor is the efficient and orderly administration of justice. In particular, the Court should exercise its discretion to avoid duplication of proceedings where related claims are being litigated in other districts. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir.1971). A major consideration in the interests of justice analysis is the desire to avoid duplicative litigation and prevent waste of time and money. 1 Schwarzer et al., Federal Civil Procedure Before Trial § 4:271 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). "To permit a situation in which two cases involving ... the same issues are simultaneously pending in different District Courts leads to the wastefulness of tim[e], energy and money that § 1404(a) was designed to prevent." *Upjohn Co. v. General Accident Ins. Co.*, 581 F.Supp. 432, 435 (D.D.C.1984) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)) Therefore, "[r]elated litigation pending in the proposed transferee forum is a factor that weighs heavily in favor of transfer." *Coultman v National RR Passenger Corp.*, 857 F Supp 231, 235 (E.D.N.Y.1994). To reduce expense, transfer is desirable to facilitate consolidation with another action pending elsewhere. See Schwarzer at ¶ 4:274 (citing *In re Eastern Dist Repetitive Stress Injury Litigation*, 850 F Supp 188, 196 (E.D.N.Y.1994)); see also *Baird v. California Faculty Ass'n*, 2000 WL 516378 (N.D. Cal. 2000) ("Related litigation pending in the proposed transferee forum is a factor that weighs heavily in favor of transfer" – venue transferred from Northern District of California to Eastern District to facilitate consolidation).

The Potter and Unico cases contain tax consequences flowing from exactly the same transactions, which should be characterized in a consistent manner in the interest of justice. In the OEL Arrangement, Potter and Unico grafted onto a longstanding employee relationship a complex web of controlled entities which had no business purpose other than to obfuscate tax determination and collection. If the step-transaction doctrine is applied by the Court, the net effect will be to compress the complex offshore structure back to its essential and original substance, the Potter-Unico employer-employee relationship. It would be in the interest of justice to have one court decide these cases, which are two sides of the same coin.

In addition to saving time and expense, it is important to avoid inconsistent decisions on the same transactions. Generally, courts have given great weight to the need to avoid multiplicity of litigation from a single transaction. *Cali v. East Coast Aviation Services, Ltd.*, 178 F.Supp.2d 276, 295 (E.D. N.Y. 2001); *Nieves v. American Airlines*, 700 F Supp 769, 773 (SDNY 1988). "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir.), *cert. denied*, 393 U.S. 977 (1968). "The interests of justice require that the cases be related, not identical." *Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161, 167 (S.D.N.Y.1992). Venue should be transferred here to avoid inconsistent results. In this particular case, the characterization of the transaction may impact the tax burden on both taxpayers.

The convenience of the parties has equal weighting in this case because the business at the heart of the dispute was located in the Eastern District. The Potter dispute was filed in Oakland, California, (Northern District) and the Unico case filed only 83 miles away in Sacramento, California, (Eastern District) by the same attorneys. The plaintiff's choice of forum is not dispositive. *Lewis v. ACB Business Services, Inc.*, 135 F3d 389, 413 (6th Cir. 1998). The only material connection of this case to the Northern District is the location of the primary residence of Potter, in Contra Costa County. Potter lists on his bankruptcy schedules another home in Rio Vista, in the Eastern District of California. Unico filed in the Eastern District because it was located in Benicia, in the Eastern District. Thus the business from which these cases arose was based in the Eastern District, supporting the transfer of venue to the Eastern District.

The convenience of the witnesses strongly weighs in favor of transfer, since consolidation will relieve the witnesses of giving a deposition in each case. Both cases are in their initial phases and formal discovery was just received by the United States on August 31, 2007 in the Potter case (although a Bankruptcy Rule 2004 exam has begun against the debtor). Because the same facts are at issue in both cases, the travel to witnesses (many of which are international or in Southern California) will be reduced by half, since depositions will not be required for each case. Assuming the FTB joins in this motion, it

1  is located in Sacramento. The Revenue Agent working both cases and her extensive documentation are
2  in the Eastern District.
3       In the event that the Court is inclined to deny a transfer of venue to the Eastern District, the
4  United States will bring a motion in the Eastern District to transfer the Unico case to the Northern
5  District. The United States does not seek a particular forum in this matter, but only seeks one single
6  adjudication of the issues arising from the same set of facts.

## CONCLUSION

The Offshore Employee Leasing Arrangement was employed by a number of taxpayers and is now listed as an abusive tax avoidance transaction. The Court is respectfully requested to enter an order directing mandatory withdrawal of this Court's reference of debtor Dean Gordon Potter's federal tax disputes to the United States Bankruptcy Court for the Northern District of California. In addition, the Court should transfer venue of the entire tax proceeding to the Eastern District of California, where the tax refund suit was filed. *Unico Services Inc. v. United States*, 2:07-CV-01009-MCE-KJM (E.D. Cal.). The Potter and Unico matters are interconnected as they arise from the same transactions, and so should be consolidated for discovery and trial. Both cases will require consideration of the same complex international transactions and entail significant federal tax questions of first impression. Trying the cases separately risks conflicting decisions on the same transactions and would duplicate judicial effort. The Offshore Employee Leasing Arrangement was structured to obfuscate and impede scrutiny. Justice would be served if a single Court can obtain the widest possible view of the Offshore Employee Leasing Arrangement.

SCOTT N. SCHOOLS
United States Attorney

THOMAS MOORE
Assistant United States Attorney
Acting Chief, Tax Division

Dated: September 7, 2007        By: /S/ **THOMAS M. ROHALL**
                                THOMAS M. ROHALL Bar no. 12201
                                Special Assistant United States Attorney

U.S. Points and Authorities in Support of Motion                                          -14-