John Gigounas (42822)
Gerald A. Holmes (59515)
100 Pine Street, Suite 750
San Francisco, CA 94111
Telephone (415) 391-4900
Facsimile (415) 296-7894
john@gigounaslaw.com

Attorneys for Debtor

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

| | |
|---|---|
| In re:<br><br>Dean Gordon Potter,<br><br>         Debtor. | Case No. 4-07-CV-074826 CW<br>Bk. Case No. 06-42425-LT-11<br><br>DEAN GORDON POTTER'S, DEBTOR, OPPOSITION TO THE UNITED STATES OF AMERICA'S MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE<br><br>**DATE:** None set<br>**TIME:** |

Dean Gordon Potter, Debtor, (Potter) by and through his undersigned attorneys, files this Opposition to the United States' Motion to Withdraw the Reference and to Transfer Venue.

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………2

ISSUES………………………………………………………………………………...4

STATEMENT OF THE CASE………………………………………………………...4

    1.    The Transacations and Agreements Underlying This Case………...4

    2.    The Litigation History…………………………………………………5

ARGUMENT……………………………………………………………………………6

    1.    Introduction…………………………………………………………... 6

    2.    Motion Not Timely Filed……………………………………………...7

    3.    Motion To Withdraw the Reference Should Be Denied……………………………………………………………………8

        a.    Standard for Withdrawal…………………………………... 8

        b.    The Withdrawal Should Be Denied As It Is Neither Mandatory nor Permissive………………………………… 9

    4.    Potter's Federal Tax Disputes Should Not Be Transferred to the United States District Court for the Eastern District of California...11

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

1

# TABLE OF AUTHORITIES

## CASE LAW

*In re Baldwin-United Corp.,* 57 B.R. 751(S.D. Ohio 1985)……………………............7

*In re CM Holdings Inc.,* 221 B.R. 715 (D. Del. 1998)…………………………………9

*Central Valley Ag Enterprises v. United States,* 326 B.R. 807 (E.D. Cal. 2005)………………………………………………………………………9

*Century Hotels v. United States*, 952 Fed. 2d 107 (5th Cir. 1992)……………...............9

*In re Columbia Gas Systems, Inc.,* 134 B.R. 868 (D. Del. 1991)………………………8

*Commodity Futures Trading Commission v. Savage*, 611 Fed. 2d 270 (9th Cir. 1979)………………………………………………………………….11

*In re G-1 Holdings, Inc.,* 295 B.R. 222 (D. N.J. 2003)…………………………………9

*Gregory v. Helvering*, 293 U.S. 464 (1935)……………………………………………6

*Homeland Stores v. Burris,* 204 B.R. 427 (D. Del. 1997)………………………………8

*Internal Revenue Service v. Luongo*, 259 Fed 2d 323 (5th Cir. 2001)…………….........9

*In re Ionosphere Clubs Inc.,* 142 B.R. 645 (S.D. N.Y. 1942)……………………………9

*In re John Manville Corp.,* 62 B.R. 600 (S.D.N.Y. 1986)………………………………9

*Laine v. Gross,* 128 B.R. 588 (D. Me. 1991)……………………………………...........7

*In re Oil Company*, 140 B.R. 30 (E.D. NY 1992)………………………………….......9

*In re Pan Am Corp.,* 133 B.R. 700 (S.D.N.Y. 1991)…………………………………...9

*Security Farms v. International Brotherhood*, 124 Fed.3d 999 (9th Cir. 1997)...............7

*Southern Corona Corp.,* 205 B.R. 712 (D. Del. 1996)…………………………………9

*In re St. Mary Hospital*, 115 B.R. 495 (E.D. Pa. 1990)………………………………10

*Vista Metals Corp. v. Metal Brokers International, Inc.* 161 B.R. 454 (E.D. Wis. 1973)……………………………………………………………..7

*In re White Motor Corp.,* 42 B.R. 693 (N.D. Ohio 1984)………………………………8

*In re Williams Ltd. Partnership*, 87 B.R. 684 (B.C.S.D. Ala. 1988)…………………..11

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

2

## STATUTES, REGULATIONS & RULES

26 U.S.C. §707(a)(2)(B)……………………………………………………………….. 9

26 U.S.C. §6426………………………………………………………………………...10

28 U.S.C. §157(d)……………………………………………………………….4,6,7,8,9

28 U.S.C. §1412……………………………………………………………………..11

Fed. R. Civ. Proc. 16…………………………………………………………………...10

Bankr. R. 1001……………………………………………………………………10

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

3

## ISSUES

1. Whether, despite waiting nine months after Potter filed his bankruptcy petition under Chapter 11, the United States' Motion to Withdraw the Reference is timely;

2. Whether, in this fact-intensive case that involves no significant issue of non-bankruptcy federal law, withdrawal of the reference under 28 U.S.C. 157(d) is appropriate; and

3. Whether the pendency of a marginally related case (*UNICO Services Inc. v. United States*, case no. 2:07-CV-01009-MCB-KIM), should require transfer of venue for the federal tax disputes to the Federal District Court for the Eastern District Court of California.

## STATEMENT OF THE CASE

**1.    The Transactions and Agreements Underlying This Case**

Potter entered into an employment agreement with Pixley (an Irish corporation) which assigned its rights to IESI (a Barbadian entity), giving IESI the worldwide rights to Potter's services. In exchange for an agent's salary, Potter was entitled to certain fringe benefits including a non-qualified deferred compensation plan upon retirement.

Potter entered into the above transaction based on competent legal advice from Alan R. Eber, Esq. and Michael Chatzky, Esq. The sole purpose for structuring this transaction was to provide a retirement program for Potter along with a degree of asset protection from creditors.

IESI subleased Potter's services to ReleaseMe (a United States entity), which in turn assigned its rights to Fair Skys (also a United States entity) (both entities were in the employee leasing business and are sometimes collectively referred to herein as "Fair Skys"). Fair Skys thus obtained exclusive rights to Potter's services in the United States. Fair Skys leased Potters' services to an entity called UNICO, which paid Fair Skys for Potter's services.

Fair Skys paid Potter a salary, which Potter reported as income on his tax returns. This salary, $250,000 per year, was not "modest," as alleged by the United States. ReleaseMe and Fair Skys (separate, independent entities) retained a percentage of Potter's salary for their fees. After deducting ReleaseMe and Fair Skys's fees, Federal and State employment taxes and

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

4

Workman's Compensation (only Fair Skys) and Potter's salary, the balance of funds was paid to IESI to fund Potter's non-qualified deferred compensation plan.[1]

### 2. The Litigation History

Potter filed a voluntary Chapter 11 petition on December 12, 2006. On April 9, 2007, Potter filed an adversary proceeding against the United States seeking a tax refund (of $358,054 in individual income tax for the taxable year ending December 31, 1998). *Potter v. United States,* Adv. No. 07-04066-LT (Bankr. N.D. Cal.). On or about June 6, 2007, the United States filed a proof of claim in the Potter bankruptcy for individual income taxes and related penalties in an amount exceeding $7 million. Potter objected to the claims on or about June 28, 2007. Potter's adversary proceeding and objections to the United States' claims are referred to herein as the "federal tax disputes."

When Potter filed his Chapter 11 petition in December, 2006, the United States was aware that the purpose of the filing was to litigate the federal tax disputes.

Potter's basic position in the federal tax disputes is that he may not be taxed on the funds paid by UNICO to ReleaseMe and Fair Skys under the lease agreement for his services, except for what was reported on his tax returns.

The United States, in turn, has taken a "shotgun approach" in attempting to tax Potter on on payments made by Fair Skys to fund Potter's non-qualified deferred compensation plan – several of the factual theories proposed include "sham," "lack of economic substance" and "constructive receipt."

The money paid by Fair Skys to IESI was to fund Potter's non-qualified deferred compensation plan. Potter argues that he is not taxable on such funds, since he had no direct or even constructive control over such funds. This was not a "tax avoidance scheme," as the United States has alleged, but a legitimate retirement plan and an asset protection plan for Potter.

---

[1] ReleaseMe and Fair Skys transferred funds they received from UNICO to Pixley after payment of Potter's salary and their percentage share and above-stated expenses. These funds ended up in IESI.

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

5

1 Regardless, the United States contention that Potter retained control over the funds transferred to
2 IESI is a purely factual issue.

3 The United States seeks to consolidate this case with the *UNICO* case pending in the
4 District Court for the Eastern District of California. But that case involves only the issue of
5 whether UNICO is liable for withholding taxes on Potter when UNICO was not allowed a salary
6 deduction for Potter (withholding taxes are only payable if there is a salary paid to an employee).
7 The UNICO case should be be disposed of by summary judgment as there is no question that
8 without a salary payment, there can be no withholding taxes.

9 The United States argues that to avoid a "whipsaw," the Potter tax disputes should be
10 consolidated with the UNCIO case, but this is not the typical "whipsaw" situation. There is no
11 inconsistency in the cases. UNICO is not claiming salary deductions. UNICO has conceded that
12 payments that were paid to IESI by Fair Skys are not deductible by UNICO because they were
13 payments for a non-qualified deferred compensation plan.

14 The United States' claims and the assorted arguments they profer are purely factual, *i.e.*
15 "substance over form," "step transaction," and "economic substance." No complex tax issues are
16 involved. Indeed, these arguments and issues have existed since the United States Supreme
17 Court decision in *Gregory v. Helvering*, 293 United States 464 (1935).

18 **ARGUMENT**

19 **1.    Introduction**

20 The United States' basic argument to withdraw the reference is that the tax doctrines
21 of "substance over form," "step transaction" and "economic substance" involve "complex tax
22 issues" dictating a mandatory removal under 28 U.S.C. §157(d). These are not complex tax
23 issues and they do not require application of non-Bankruptcy Code provisions.

24 Secondly, the United States asserts that the Eastern District is the proper venue for this
25 case because of the pending UNICO case. But that case is unrelated – it involves only the issue
26 of whether withholding taxes are applicable when no salary was paid to Potter. The UNICO case
27 should be disposed of by summary judgment.

28

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

6

### 2. **Motion Not Timely Filed**

Section 157(d) explicity requires a motion to withdraw reference to be <u>timely</u>:

> (d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or <u>on timely motion of any party</u>, for cause shown. The district court shall, <u>on timely motion of a party</u>, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. 28 U.S.C. §157(d) (emphasis supplied).

What constitutes "timely" under the statute has been examined by many courts, each of which would find the United States' motion untimely in this case. The Ninth Circuit has cited with approval the holding that a motion to withdraw reference is timely "if it was made <u>as promptly as possible</u> in light of the developments in the bankruptcy proceeding." In *re Baldwin-United Corp.,* 57 B.R. 751, 754 (S.D. Ohio 1985) (emphasis supplied) *cited in Security Farms v. International Brotherhood*, 124 Fed.3d 999, 1007 n.3 (9th Cir. 1997). In *Baldwin*, the Court found that, to be timely, the motion to withdraw the reference should be filed when the time the proof of claim is filed. Id. at 754. In *Laine v. Gross,* 128 B.R. 588, 589 (D. Me. 1991), the defendant moved to withdraw the reference more than six months after the filing of the complaint from which it arose. The court said even though grounds for withdrawal of the reference existed, the motion was untimely. In *Vista Metals Corp. v. Metal Brokers International, Inc.* 161 B.R. 454, 457 (E.D. Wis. 1973), a motion to withdraw the reference was not granted even though the movants requested a jury trial. The court found that the bankruptcy court already had significant exposure to many factual and legal issues in the case and to the parties involved, and that the proceeding was in its early stages. A motion to withdraw should be made "as "soon as possible" after the moving party has notice of grounds for withdrawing the reference. Id. at 457.

In the case at issue, the United States had notice that the sole purpose of the Chapter 11 was to litigate the federal tax disputes on the date the Chapter 11 was filed – December 12, 2006.

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

7

1 Despite this notice, the United States delayed until June 6, 2007, to file its claims, and delayed
2 over nine months before filing the instant motion. The tax disputes with Potter and UNICO have
3 been in existence for a substantially longer period (over five years).

4 The United States was aware of the federal tax claims at the time the Chapter 11 was
5 filed (and certainly no later than the date of the first 341 examination of Potter on January 8,
6 2007) and was aware of the necessity to file the motion to withdraw. Yet the matter proceeded
7 in Bankruptcy Court, with counsel and the Court investing resources into its litigation, for over
8 nine months. Therefore, the United States should have filed the motion to withdraw the
9 reference no later than after Potter's objection to the United States' claims.

10 The United States has failed, without substantive reason, to satisfy the statutory
11 requirement of a "timely" motion. The motion to withdraw the reference therefore must be
12 dismissed.

### 3. Motion to Withdraw the Reference Should be Denied

#### a. Standard for Withdrawal.

15 Should the Court decline to dismiss the United States' motion as untimely under Section
16 157(d), then the motion must meet the standard for either "mandatory" or "permissive"
17 withdrawal of the reference. *Homeland Stores v.* Burris, 204 B.R. 427, 430 (D. Del. 1997).
18 Mandatory withdrawal occurs "<u>only</u> if [the] court can make an <u>affirmative determination</u> that
19 resolution of the claims will require substantial and material consideration of…non-code
20 statutes." *In re: White Motor Corp.,* 42 B.R. 693, 705 (N.D. Ohio 1984) (emphasis supplied).
21 Thus, withdrawal is mandatory only if the bankruptcy court would be called upon to resolve
22 substantial and material issues under non-Bankruptcy Code statutes.

23 When only application of well-settled law is required, withdrawal is not mandatory. *In*
24 *re: Columbia Gas Systems, Inc.,* 134 B.R. 868, 811 (D. Del. 1991).

25 The guiding determination for mandatory withdrawal is whether the case presents "issues
26 requiring significant interpretation of federal laws that Congress would have intended to have
27 decided by a district judge rather than a bankruptcy judge," rather than the straightforward
28

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

8

1    application a federal statute to a particular set of facts. In *re: Johnson Manville Corp.,* 62 B.R.
2    600, 602 (S.D.N.Y. 1986). The removal provision of Section 157(d) should not be construed as
3    an "escape hatch" in which most bankruptcy matters could routinely be removed to the district
4    court. See *Southern Corona Corp.,* 205 B.R. 712, 714 (D. Del. 1996).

### b. The Withdrawal Should Be Denied As It Is Neither Mandatory Nor Permissive.

In the case at issue, the Bankruptcy Court is not required to decide the application a substantial or material non-Bankruptcy Code provisions. This case is basically a factual case and the fact that the Bankruptcy Court is called upon to apply tax law doctrines is not a basis for granting the motion. See *Internal Revenue Service v. Luongo*, 259 Fed. 2d 323 (5th Cir. 2001) (necessary application of state law in resolving the bankruptcy matter did not constitute a cause for mandatory removal).

The Bankruptcy Court is perfectly able to make factual determinations as to whether there was a sham transaction and/or whether the form of the transaction meets the substance of the transaction. This is a core proceeding –the argument that the complexity of the transaction disqualifies a Bankruptcy Court judge has no merit.

Further, the tax cases cited by the United States for removal are distinguishable, and each proves the point that only cases requiring novel or specialized interpretations of non-Bankruptcy Code statutory law will support a motion to withdraw the reference to Bankruptcy Court. *In re: G-1 Holdings, Inc.,* 295 B.R. 222 (D. N.J. 2003), involved a novel issue of interpreting the application of 26. U.S.C. §707(a)(2)(B). *In re: CM Holdings, Inc.,* 221 B.R. 715 (D. Del. 1998), involved the legal issue of the tax treatment of corporate-owned life insurance. *Central Valley Ag Enterprises v. United States,* 326 B.R. 807 (E.D. Cal. 2005), involved the legality of lease-stripping tax. *In re: Ionosphere Clubs Inc.,* 142 B.R. 645 (S.D. N.Y. 1992), involved a significant interpretation of the Internal Revenue Code and ERISA. *In re: Oil Company*, 140 B.R. 30 (E.D. NY 1992), involved a complex tax issue of first impression. *In re: Pan Am Corp.,* 133 B.R. 700 (S.D.N.Y. 1991), involved Title 11 and ERISA provisions, and *Century Hotels v.*

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

9

1  *United States*, 952 Fed. 2d 107 (5th Cir. 1992), involved a wrongful levy claim made under 26
2  U.S.C. §6426.
3      In the case at issue, the factual doctrines relied on by the United States are familiar and
4  time-worn:
5      i. The fact that the Bankruptcy Court must make a factual inquiry is no basis for
6  removal. Bankruptcy Courts have been called upon to make much more difficult factual
7  inquiries. The factual doctrines involved in this case are much simpler than the factual issues the
8  Bankruptcy courts have been involved in other bankruptcies, *e.g.*, the *PG&E* bankruptcy.
9      ii. This is not a case of first impression in applying the factual doctrines. It may be
10 the first case to determine whether these factual doctrines apply to the case at issue involving the
11 establishment of a foreign non-qualified deferred compensation plan. But no major
12 interpretation of any non-Bankruptcy Code provision is required, unlike in *re: St. Mary Hospital*,
13 115 B.R. 495 (E.D. Pa. 1990).
14     iii. Assuming that the United States uses expert testimony, this is not grounds to
15 allege that this is a complex arrangement requiring experts which the Bankruptcy Court judge
16 cannot adequately handle. Bankruptcy Courts often consider expert testimony.
17     iv. Nor is the possibility of two levels of appeals a basis for removal. It is, of
18 course, true that there are two levels of appeal from a Bankruptcy Court decision, but the United
19 States cannot avoid the legislated structure of judicial redress simply for its own convenience,
20 and, regardless, whether any appeal will be taken is speculative.
21     v. The United States' argues that Federal Rule of Civil Procedure 16 (governing
22 pretrial conferences) makes the Federal District Court better able to administer "complex" tax
23 litigation. This argument turns the practical truth on its head. Bankruptcy Rule 1001, among
24 others, explicitly requires that bankruptcy litigation proceed expeditiously. As a result, pre-trial
25 conferences likely are more common and more frequent in <u>bankruptcy</u> litigation than in federal
26 court litigation, since Bankruptcy Court judges must maintain firm control to satisfy these
27 requirements. The discovery rules are no different in bankruptcy litigation than those in federal
28

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

10

1  court litigation. It is patently obvious that a Bankruptcy Court judge is equally capable of
2  deciding factual issues as any District Court judge, even if the factual issues involve tax matters.
3      For the foregoing reasons, the Motion to Withdraw Reference should be denied.

4  **4.  Potter's Federal Tax Disputes Should Not Be Transferred to the United States**
5      **District Court for the Eastern District of California**

6  The United States makes a last-ditch attempt to transfer venue of the instant case to the
7  Eastern District of California, claiming that it is closely interrelated with the *UNICO* case in that
8  court. But the Potter tax disputes and the UNICO case are far from sufficiently interrelated to
9  require that they be consolidated for trial. The only similarity between the cases is the fact that
10 Potter now owns one-hundred percent of UNICO. Other than that, the issues are entirely
11 different.

12 The UNICO case involves one issue: whether UNICO is liable for withholding taxes
13 because deductions by UNICO for salary to Potter were disallowed. This issue is disposable by
14 summary judgment. On the other hand, the Potter federal tax disputes involve offshore payments
15 held by IESI to fund a non-qualified deferred compensation plan, which, as stated by the United
16 States, arose out of an employee leasing program referred to as O.E.L.

17 The United States relies broadly on 28 U.S.C. §1412, which provides that a case may be
18 transferred in the interests of justice. Under that statute, the United States has the burden of
19 establishing that the interest of justice requires transfer to another district. *Commodity Futures*
20 *Trading Commission v. Savage*, 611 Fed. 2d 270, 279 (9th Cir. 1979). Facts relevant to
21 determining the "interest of justice" are:

22     a.  Economic and efficient administration which requires the avoidance of
23 duplicative litigation. *In re Williams Ltd. Partnership*, 87 B.R. 684 (B.C.S.D. Ala. 1988). In
24 this case, separate litigation of the Potter dispute and the *UNICO* case would not result in
25 duplicative litigation. The issues are entirely different and different facts would be involved.
26 The UNICO case should be disposed of by summary judgment. The only similarity between the
27 cases is that they both arose from the OEL audit of UNICO.
28

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

11

      b. Potential for inconsistent decisions. In this case, there can be no inconsistent decision because the *UNICO* case can only determine whether withholding tax is applicable where no salary payments were allowed or paid to Potter, and not the multiple other business issues in dispute in the instant case.

      c. The bankruptcy case has been pending in the Northern District for nearly ten months. Potter and many of the witnesses are located in the Northern District, as are his attorneys. The major witnesses are located in Southern California and elsewhere. Thus, most of the potential witnesses are not located in the Eastern District  The only conceivable connection with the Eastern District is the pending UNICO case.

Thus, even if the motion to remove the reference were granted (which it should not be), the facts dictate that the interests of justice require that the case remain in the Northern District.

Respectfully submitted,

Dated: September 26, 2007          /s/ John Gigounas
                                          John Gigounas

Law Offices of
Simpson & Gigounas
100 Pine Street #750
San Francisco, CA
94111
(415) 391-4900

OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO TRANSFER VENUE

12