JOSEPH P. RUSSONIELLO (Cal Bar. 44332)
United States Attorney

THOMAS MOORE (ASB 4305-078T)
Assistant U.S. Attorney
Chief, Tax Division

G. PATRICK JENNINGS
ADAIR F. BOROUGHS
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C.  20044-0683
Telephone:   (202) 307-6648
             (202) 305-7546
Facsimile:   (202) 307-0054
E-mail:      guy.p.jennings@usdoj.gov
             adair.f.boroughs@usdoj.gov

THOMAS M. ROHALL (Wash. St. Bar No. 12201)
Special Trial Counsel, Tax Division
U.S. Department of Justice
4330 Watt Ave., Suite 470
Stop No. SA 2801
Sacramento, CA 95821-7012
Tel No. (916) 974-5700
Fax No. (916) 974-5732

Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>DEAN GORDON POTTER,<br><br>    Debtor. | Case No. C-07-4826-CW<br>**Lead Case** |
| UNICO SERVICES INC.,<br><br>    Plaintiff,<br><br>vs<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. C-08-00800-CW<br><br>**Consolidated Case**<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

Pursuant to the Court's Case Management Scheduling Order, filed February 12, 2008, and Civil L.R. 16-9(a), the United States of America, by and through its undersigned attorneys, the Plaintiff, Unico Services Inc. (Unico) and the debtor, Dean Gordon Potter (Potter), by and through their undersigned attorneys, hereby submit this Joint Case Management Statement.

## JURISDICTION AND SERVICE

The Court has jurisdiction over the Potter's objection to claim of the Internal Revenue Service (IRS) and the refund adversary complaint filed in *In re: Potter* (collectively referred to as "Potter's federal tax disputes") pursuant to 11 U.S.C. §§ 505(a) and 505(b), 28 U.S.C. §§ 157(a), 157(d), 1334(a), and 1334(b). The Court has jurisdiction over Unico's refund claims for the tax periods ending June 30, 2000, September 30, 2000, and December 31, 2000, pursuant to 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a). The United States contends that the Court lacks jurisdiction over Unico's claim for refund for the tax period ending September 30, 2001, because Unico did not fully pay the assessment of this tax as required by *Flora v. United States*, 362 U.S. 145 (1960). The Court has jurisdiction over the United States' Counterclaim in *Unico v. United States* pursuant to 26 U.S.C. §§ 7401, 7402, and 7403 and 28 U.S.C. §§ 1340 and 1345. The Court has personal jurisdiction over Unico and Potter, and venue was resolved by motion. No parties remain to be served.

## FACTS

1. **The United States contends the following:** After thirty years of owning and operating Unico as its key employee and Chief Executive Officer, Potter entered into an Offshore Employee Leasing ("OEL") Arrangement designed to avoid taxes and transfer much of his compensation from Unico offshore. The OEL Arrangement was constructed by tax shelter promoters and required a series of simultaneous acts by the Potter, Unico, and other entities created for such schemes. Under the OEL Arrangement, Potter purportedly resigned from his longtime employment at Unico to become an employee of Pixley, a recently-created Irish entity. Potter in fact remained an employee of Unico

after January 1, 1998, and through at least 2005.  No other Unico employee participated.[1]

2.  **The United States further contends:** that Potter and Unico used jurisdictions that engage in bank secrecy (offshore tax havens) intending to impede any Internal Revenue Service ("IRS") examination of the OEL Arrangement.  The use of offshore tax havens was further intended to impede any IRS collection efforts.  The structure of the OEL Arrangement had no independent business purpose other than to avoid employment and income tax.  As part of the overall arrangement, the OEL arrangement promoters working for Potter drafted and caused to be executed various trusts, transfers, and lines of credit.  The trust scheme was primarily intended to conceal Potter's control of the compensation transferred offshore.  The trust scheme was deliberately complex and used offshore tax havens with the intent to impede the IRS.

3.  **The United States further contends**: that the Potter compensation held offshore is unreported taxable income to Potter, and the Internal Revenue Service assessed substantial penalties for failure to file information with respect to foreign trusts.  The Service further assessed Unico for corporate income and employment taxes relating to the Potter compensation.  Some of these tax assessments were duplicated against both Potter and Unico to avoid litigation and collection risk.  The United States contends that the assessments should be made consistent, if at all, only after all factual issues are determined, appealed, and the tax liabilities fully collected.  The United States contends that there is a risk to collection in a case with a multiplicity of entities, where assets have shifted between entities, and where one entity concedes the tax liabilities.

4.  **The United States further contends:** that the tax liabilities at issue here exceed $8 million.  Potter's personal income tax years at issue are 1998 through 2005 (although

---

[1] Even an outline of the transaction requires many pages.  For more detail, please refer to the Counterclaim of the United States in the Unico case filed November 16, 2007.

the OEL Arrangement appears to have run only through 2003). The Unico employment tax periods at issue are June 30, 2001, September 30, 2001, December 31, 2001, June 30, 2002, September 30, 2002, December 31, 2002, June 30, 2003. The Unico corporate income tax periods at issue are the fiscal years ending June 30, 1998 through June 30, 2001.

5. **Potter and Unico** object to the United States' characterization of the terms "tax shelter, trust scheme, and bank secrecy." **Unico contends**: that the United States through its agency the Internal Revenue Service (IRS) arbitrarily assessed employment taxes (FICA & FUTA) for the tax periods June 30, 2000, September 30, 2000, and December 21, 2000, and September 30, 2001, plus penalties under IRC §§6662(a) and 6656. These assessments for employment taxes were asserted on the erroneous basis that Unico paid salaries to Potter. The IRS never allowed any salary deductions for Potter for the periods at issue, and Unico never claimed any salary deductions for Potter. Potter was being paid by Release Me and/or Fair Skys for services he was performing and appropriate employment taxes were being withheld.

6. **Potter contends:** that he entered into an employment agreement with Pixley (Irish Corp.) which assigned its rights to IESI (Barbadian entity). IESI had the worldwide rights to Potter's services pursuant to the agreement, and in exchange for an agent's salary, Potter had certain fringe benefits including a non-qualified deferred compensation plan upon retirement. Potter entered into the above transaction based on competent legal advice from Alan R. Eber, Esq. and Michael Chatzky, Esq. The sole purpose for structuring this transaction was to provide a retirement program for Potter with some asset protection planning.

7. **Potter further contends**: IESI subleased Potter's services to Release Me (U.S.) which in turn assigned its rights to Fair Skys (U.S.). (Both Release Me and Fair Skys are referred to as Fair Skys.) Fair Skys obtained exclusive rights to Potter's services in the

U.S. which it leased to UNICO and UNICO paid Fair Skys for Potter's services. At the time of the transaction, UNICO was owned 60% by Potter.

8. **Potter further contends**: that UNICO paid Fair Skys a fee pursuant to the leasing agreement, and Fair Skys, in turn, paid Potter a salary, which Potter reported as income on his tax returns and Fair Skys, an independent entity, retained a percentage of its fee. Fair Skys paid employment taxes on Potter's salary. After Fair Skys's percentage and Potter's salary, the balance of the funds was sent to IESI to fund Potter's non-qualified deferred compensation plan.

9. **Potter further contends**: that the Internal Revenue Service has asserted that Potter is taxable on payments made by Fair Skys to fund Potter's non-qualified deferred compensation plan on several theories, i.e. sham, lack of economic substance and constructive receipt. The IRS has taken a shotgun approach in attempting to tax these proceeds even though Potter had no control of these funds and did not receive any benefit from the funds plan, directly or constructively.

10. **Potter further contends**: that the penalties asserted in an amount in excess of six million dollars under IRS §§6038 and 6077 are erroneous. The IRS has failed to state any meaningful facts upon which it is basing the penalties that it is asserting. In addition, the IRS has asserted negligence penalties under §6662, which again is erroneous as Potter acted in good faith in reliance on competent legal advice in entering into the above transaction. He acted as any reasonable and prudent person would have acted.

## **LEGAL ISSUES**

**The parties request** that the Court confirm that all Federal Rules of Civil Procedure shall apply to this entire proceeding.

1. **The United States will argue**, *inter alia*, that the OEL arrangement should be disregarded under doctrines of economic substance, substance-over-form, and step-

transaction. For recent articulations of these related theories see *Coltec Industries, Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006); *Brown v. United States*, 329 F.3d 664 (9th Cir. 2003); *Jade Trading LLC v. United States*, 80 Fed. Cl. 11 (2007). See also *Sparkman v. Commissioner,* 509 F.3d 1149 (9th Cir. 2007); *Robino Inc. Pension Trust v. Commissioner,* 894 F.2d 342 (9th Cir. 1990)*; Casebeer v. Commissioner*, 909 F.2d 1360 ( 9th Cir. 1990). The form of the OEL arrangement should be disregarded as an elaborate attempt to avoid federal taxation, and the substance of the transaction should control. Potter in fact remained Unico's employee, as he had been for many years. The only purpose of the arrangement was to conceal taxable income and to avoid tax collection after the scheme was unwound.

2. **The United States** may also argue that the money transferred offshore through the OEL arrangement should be taxed to Potter under the doctrines of economic benefit (Treas. Regs. §1.451-2), constructive receipt and assignment of income.

3. **UNICO's position** is that without salary payment to Potter form UNICO, there can be no employment taxes owed for Potter by UNICO. No salary deductions were claimed for Potter and none were allowed by the IRS.

4. a. **Potter's position** is that the funds being held pursuant to a foreign non-qualified deferred compensation by IESI are not taxable to Potter as Potter did not actually or constructively receive the funds. Potter's position that he was not in constructive receipt of the funds is based on the IRS Rabbi Trust rulings [IRS Lt. R1. 8113107 and subsequently blessed through the issuance of Rev. Proc.92-64, 1992-2CB 422, and other provisions of the IRC]. At the time of these transactions, the law did not treat funds held by a foreign non-qualified deferred plan as constructively received by the employee. Congress has since changed the law so that an employee must recognize as income funds placed by an employer in a foreign non-qualified deferred plan. Internal Revenue Code §409(b)(1), (3), and (4).

4. b. **Potter further contends** that none of the penalties should apply. Section 6662 would only apply if Potter acted negligently, but where he relies on competent counsel, he

cannot be held liable under §6662.  The Section 6077 penalty applies only if the person is required to file a return as required by IRC §6048, but only if the failure to file is due to willful neglect, and not reasonable cause.  Potter was not required to file the information returns required by §6048, and in any event if he was required to file, his failure was due to reasonable cause.  The §6038 penalty required the filing only if such person controls the foreign entity.   Again, Potter had no control under §6038(e)(2), and even if Potter was required to file, his failure was due to reasonable cause.  Finally, the penalty calculations of the IRS are in error and are based on mere speculation.  The positions the IRS has taken have been inconsistent and arbitrary.  They allege employment taxes against UNICO without allowing any salary deductions for Potter.  The IRS asserts penalties without detailing the basis, and they are speculative.  Finally, the IRS fails to concede the validity of Rabbi Trusts for foreign non-qualified plans as these were valid at the time such a plan was created for Potter.

## MOTIONS

There currently are no motions pending with the Court in either case.  Prior to the transfer of the Unico case, there were no pending motions in the Eastern District.  Likewise, prior to the Court's opinion withdrawing the reference in the Potter's bankruptcy case there were no pending motions before the Bankruptcy Court.

The parties view the trial of these consolidated cases as best accomplished in three phases.  The first phase would be a determination tax liabilities related to the claim of the foreign non-qualified deferred compensation plan and the OEL arrangement.  This phase would include the tax liabilities of the Potter for tax years 1998 through 2003 and all of Unico's tax liabilities at issue in this case.  The second phase should be a determination of Potter's tax liabilities for tax years 2004 and 2005.  These two years differ factually and legally from the preceding years in that they do not involve the OEL arrangement.  The third phase would be enforcement of the federal tax liens and judgment lien on the property or rights to property of Unico and Potter, if he is determined to have any tax liability (and assuming the automatic stay

is modified or terminated).  Discovery should proceed concurrently on all phases so that the parties need not revisit witnesses.

The parties also anticipate that Motions for Summary or Partial Summary Judgment will be filed in due course.

## **AMENDMENT OF PLEADINGS**

The parties do not anticipate the amendments of any pleadings at this time.  The United States may seek to add additional parties during the collection phase of this litigation.  The United States alternatively could file a separate action against certain third parties concerning the collection of the Unico liabilities.

## **EVIDENCE PRESERVATION**

The parties are currently discussing this particular issue.  The United States would in particular wish to know how Potter and Unico are preserving electronic data (assuming there is any electronic data) and communications between the parties, the tax advisors, and any offshore entities.

## **DISCLOSURES**

The parties in both consolidated cases previously waived initial disclosures.  The parties continue to waive initial disclosures pursuant to Federal Rules of Civil Procedure ("FRCP") 26(a)(1).

## **DISCOVERY**

**Discovery taken to date:**

The parties have conducted some limited discovery prior to the cases being consolidated.  Potter served initial interrogatories in the bankruptcy case and adversary proceeding.  Likewise, Unico served limited interrogatories and requests for admissions while the case was pending in the Eastern District.  The United States has responded to both sets of discovery.  The United States is in the final stages of preparing electronic copies of documents responsive to Potter's requests, which will be provided to counsel.

The United States requested an order from the Bankruptcy Court authorizing a Bankruptcy Rule 2004 examination of Potter.  Four days of examination have been conducted.

Additional days of examination will likely be required.  As part of the examination process, the United States requested the production of numerous documents, some of which were produced.  The United States was informed that many of the documents requested were in storage at the Unico offices.  The United States is in the process of contracting, either internally or externally, for the scanning of the numerous documents.  A dispute has arisen regarding how that process will be accomplished.  The number of boxes to be scanned is in excess of 200 boxes.  Potter and Unico wanted the scanning to be accomplished at the offices of Unico because of security and assurance that no records would be lost or misplaced.  Further Potter and Unico contend that most of the records have already been examined by IRS personnel.  The United States contends that is impractical and inordinately expensive.  The United States needs to have those boxes scanned at the offices of the company that ultimately will do the scanning.

**Timing and Limitations on Discovery:**

The parties herein agree that discovery in this action shall be governed by Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the Northern District of California, without modification, except to the extent provided below.

Depositions:  Pursuant to Fed. R. Civ. P. 26(b)(2), the United States contends that there should be no presumptive limitations upon the number of oral or written depositions taken under Fed. R. Civ. P. 30 and 31 due to the unusual complexity of the transaction at issue.  In addition, though most depositions will be completed within the time limits of Fed. R. Civ. P. 30(d)(1), the United States anticipates that some of the depositions will take longer than one day per witness.  Plaintiff and Potter anticipate that they may, at some point, object to the number of depositions that the United States may take.  The parties shall use reasonable efforts to confer prior to scheduling depositions.  In addition, Potter may attempt to utilize Letters Rogatory.

Interrogatories:  Absent stipulation of the parties or unless otherwise ordered by the Court, there shall be no presumptive limitations upon the number of written interrogatories propounded pursuant to Fed. R. Civ. P. 33.

Requests for Admission: Absent stipulation of the parties or modification by the Court for cause, there shall be no presumptive limitation upon the number of requests for admissions which may be propounded by any party.

Modification of Discovery Plan: Any extensions or modifications of the discovery schedule and plan shall be by stipulation of the parties or order of the Court for cause upon no less than ten (10) days' notice.

## CLASS ACTIONS

This litigation is not a class action.

## RELATED CASES

Two related cases are pending in the United States Tax Court with the caption of *Unico Services, Inc. v. Commissioner*, case numbers 19507-06 (FYE 6/30/02) and 7573-07 (FYE 6/30/03)*.* These cases have been stayed by the Tax Court pending the outcome of these consolidated cases. It is anticipated that another Tax Court proceeding involving FYE June 30, 2004, will be docketed as soon as UNICO files a Tax Court Petition. Prior Unico Tax Court cases were closed with a decision entered. Case numbers *6465-02, 10452-04, 10796-05.* Another related case is *Kessler v. Potter*, Civ. No. C07-00821 (N.D. Cal.), involving a house and a potential tax lien. Another case is *Potter v. Fair Skys*, Adv. No. 07-4073 (Bankr. N.D. Cal), involving money which Potter seeks to recover from Fair Skys.

## RELIEF

Unico seeks a refund of the employment taxes collected by the IRS. The United States counterclaimed to reduce federal tax assessments to judgment for additional tax periods. In addition, the United States seeks to enforce its tax liens against property or rights to property of Unico.

Potter seeks a determination that he is not liable for the income tax liabilities assessed and asserted by the IRS for tax years 1998 through 2005. In addition, Potter seeks a determination that he is not liable for the various international penalties assessed by the IRS, as well as the IRC §6662 penalty. Unico seeks a determination that it is not liable for the employment tax liabilities relating to Potter's compensation.

## SETTLEMENT AND ADR

Potter and Unico have stated a desire to have the case referred to a settlement judge. The United States does not oppose such a request, especially if it can result in narrowing the issues to be tried. The United States does not believe that a referral under ADR L.R. 3-5 would be beneficial in these cases.

## CONSENT TO MAGISTRATE JUDGE

The parties do not consent to have a magistrate judge conduct any further proceedings in these consolidated case.

## OTHER REFERENCES

The parties do not believe that binding arbitration or any other references are appropriate in these cases.

## NARROWING OF ISSUES

The parties anticipate that much of the documentary evidence can be introduced into evidence pursuant to stipulation. In addition, the parties are discussing the possibility of stipulating to the transcripts of the various recorded interviews conducted by the Revenue Agent assigned to the audits of Unico and Potter. The parties also anticipate that Motions for Summary Judgment, or Partial Summary Judgment will be brought before the Court. The United States believes that the trial of these cases should be accomplished in three different phases, as outlined in the Motions portion of this Statement.

## EXPEDITED SCHEDULE

The parties do not believe that these cases can be handled on an expedited basis.

## SCHEDULING

Proposed Schedule

| | |
|---|---|
| Designate Expert Witnesses: | November 24, 2008 |
| Designate Rebuttal Expert Witnesses: | December 16, 2008 |
| Last day for expert discovery: | February 27, 2009 |
| Last day for Fact Discovery: | March 31, 2009 |
| Last day to file dispositive Motions: | April 30, 2009 |
| Settlement Conference Date: | none requested at this time |
| Pretrial Conference Date: | At the Court's convenience |

Trial Date:                              At the Court's convenience

## TRIAL

Neither party has requested a jury trial. The parties anticipate that the first phase of trial, determining tax liabilities related to the OEL arrangement, could last three weeks.

## DISCLOSURE OF NON-PARTY ENTITIES OR PERSONS

The United States is exempted from the requirement of CLR 3-16. Unico and Potter filed their Certification on February 14, 2008. Unico and Potter again certify that they are not aware of any entity or person which has any financial interest of any kind in the subject matter of these consolidated cases.

## OTHER MATTERS

The parties have nothing further at this time.

Dated: March 18, 2008              JOSEPH P. RUSSONIELLO
                                   United States Attorney

                                   THOMAS MOORE
                                   Assistant U.S. Attorney
                                   Chief, Tax Division

                              By:  /s/ G. Patrick Jennings
                                   G. PATRICK JENNINGS
                                   Trial Attorneys, Tax Division
                                   United States Department of Justice
                                   P.O. Box 683, Ben Franklin Station
                                   Washington, D.C. 20044-0683
                                   (202) 307-6648

                                   Attorneys for the United States

Dated: March 18, 2008              /s/ John Gigounas
                                   JOHN GIGOUNAS
                                   Law Offices of John Gigounas
                                   100 Pine Street, Suite 750
                                   San Francisco, CA 94111-5207
                                   (415) 391-4900

                                   Attorneys for Potter and Unico